UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEROY PALMER,<br><br>    Plaintiff,<br><br>v.<br><br>CRAIG P. FRANZ, RN,<br><br>    Defendant. | No. 13 C 1698<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiff LeRoy Palmer brings this action against Defendant Craig Franz for an injury he suffered while in the custody of the Illinois Department of Corrections at the Northern Reception and Classification Center. Franz moved for summary judgment on Palmer's medical malpractice claim [R. 241]. For the following reasons, that motion is denied.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue

for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background

The Court assumes the parties' familiarity with its prior summary judgment order, which provides a detailed factual background of the case. *See* R. 177. Briefly explained, and as relevant here, Plaintiff LeRoy Palmer was an inmate in the custody of the Illinois Department of Corrections (IDOC). R. 247 ¶ 1. Palmer was born with a congenital deformity of the left arm and is missing most of his left hand. *Id.* ¶ 7.[1]

On January 11, 2012, Palmer was transferred from Shawnee Correctional Center to the Northern Reception and Classification Center (NRC). *Id.* ¶¶ 5, 6. While at Shawnee, the medical staff issued Palmer a "Low Gallery – Low Bunk" pass. R. 248-4. When Palmer arrived at NRC, nurse Craig P. Franz conducted his transfer screening and examination (a transfer screening is routine when an inmate moves to a new institution). R. 242-2 at 20 (Palmer Dep. 75:21-24). On the "Physical Disabilities/Limitations" line of Palmer's medical transfer summary, Shawnee medical staff had written: "L arm not fully developed/low bunk, low gallery/slow eating pass." R. 242-6. Palmer testified that he informed Franz that he required a low bunk permit because of his congenital deformity, and that he had previously been

---

[1] The parties dispute the exact severity of Palmer's congenital defect. The dispute is not relevant to the outcome of this motion.

2

issued one. R. 242-2 at 24 (Palmer Dep. 90:13-18). Franz responded that Palmer would need to see a doctor if he wanted a low bunk pass at NRC. *Id.* On the bottom of the transfer summary, Franz wrote next to the line marked "Deformities: Acute/Chronic" that Palmer's left arm was "not fully developed." R. 242-6. Under the heading "Plan Disposition," Franz marked the box next to "Sick Call: Routine." *Id.* The form also gave the option of choosing "Sick Call: Urgent" and "Emergency Referral," but Franz did not check either of those boxes. *Id.* On the line marked "Current Medications/Treatment," Franz wrote "see above," referring to where Shawnee medical staff had listed Palmer's medications and indicated that he had a low bunk permit. *Id.* Palmer's entire encounter with Franz lasted 10-15 minutes. R. 250 ¶ 4.

When Palmer arrived at his cell following the intake screening, the top bunk was the only bed available. R. 242-2 at 13 (Palmer Dep. 47:5-9). Over the next eleven days, Palmer submitted two requests for medical treatment to obtain a low bunk pass but did not receive a response. *Id.* at 23 (Palmer Dep. 86:20-87:4). On January 22, Palmer fell and injured his knee while attempting to get down from his bunk. R. 247 ¶ 15; R. 248-1 ¶ 9. Palmer sued Franz for negligence and deliberate indifference to his serious medical needs.

In September 2017, the Court granted Franz's motion for summary judgment on Palmer's deliberate indifference claim. The Court also dismissed Palmer's negligence claim without prejudice for failing to attach an attorney's affidavit and reviewing physician's report as required by section 2-622 of the Illinois Code of Civil

3

Procedure, the Healing Art Malpractice Act ("section 2-622"). The Seventh Circuit reversed and remanded on the deliberate indifference claim, holding that a reasonable jury could conclude that Franz's refusal to act was a conscious decision to ignore the risk of harm posed to Palmer. Palmer then filed a fifth amended complaint, attaching an attorney's affidavit and physician's report. Franz now moves for summary judgment on Palmer's medical malpractice claim.

## Analysis

Franz offers two reasons why the Court should grant summary judgment on Palmer's claim for medical malpractice: 1) Palmer failed to disclose an expert to establish the proper standard of care; and 2) Franz's conduct was not a proximate cause of Palmer's injury.

### I. Expert Testimony

To prevail on a medical malpractice claim, a plaintiff must establish the following elements: "(1) the proper standard of care, (2) a deviation from that standard, and (3) an injury proximately caused by that deviation." *Prairie v. Univ. of Chicago Hosps.*, 698 N.E.2d 611, 614-15 (Ill. App. Ct. 1998) (citing *Purtill v. Hess*, 489 N.E.2d 867, 872 (Ill. 1986)). These elements generally must be established through expert testimony. *Id.* at 615. However, an exception to the rule requiring expert testimony exists where the healthcare provider's conduct "is so grossly negligent or the treatment so common that a layman could readily appraise it." *Heastie v. Roberts*, 877 N.E.2d 1064, 1088 (Ill. 2007). Palmer has not procured expert testimony to establish the standard of care applicable to Franz's conduct. Rather, he contends his

4

claim falls under the gross negligence exception. Franz counters that his conduct involved the exercise of professional judgment such that expert testimony is necessary to assist the jury.

The rationale for the expert testimony requirement is that "jurors are not skilled in the practice of medicine and would find it difficult without the help of medical evidence to determine any lack of necessary scientific skill on the part of the physician [or any other health care provider]." *Prairie*, 698 N.E.2d at 615 (alteration in original) (quoting *Walski v. Tiesenga*, 381 N.E.2d 279, 282 (Ill. 1978)). In other words, "the subject matter is so complicated that laypersons are not in an adequate position to assess whether a breach of duty has occurred." *Id.* (quoting *Schindel v. Albany Medical Corp.*, 625 N.E.2d 114, 119 (Ill. App. Ct. 1993)). To determine whether a medical malpractice claim requires expert testimony or if it qualifies for the gross negligence exception, the relevant question is whether a juror can assess if a breach of duty occurred using common knowledge. *See id.* at 615 n.1 ("Our review of the case law shows that this exception is sometimes referred to in the singular, while other times is described as two different exceptions, *i.e.*, "gross negligence" *or* "common knowledge" exceptions. Semantics aside, the inquiry is whether a lay person can readily appraise the alleged negligence using his or her everyday knowledge.").

The Court would be more inclined to agree with Franz that expert testimony is needed if his decision had been whether Palmer's condition necessitated a low bunk pass. *See Kolanowski v. Illinois Valley Cmty. Hosp.*, 544 N.E.2d 821, 824 (Ill. App. Ct. 1989) ("it has been previously determined in this state that the need for bed rails in

light of a patient's medical condition is not a matter of common knowledge, but requires medical knowledge, skill, and training."). But that determination had already been made by Shawnee medical personnel. Rather, the issue bearing on the standard of care is whether Franz failed to take steps to ensure Palmer continued to receive a low bunk pass when he arrived at NRC.[2] Palmer presented testimonial evidence of steps Franz could have taken such as calling a doctor during the screening to get authorization to issue a low bunk pass or placing him on urgent sick call to see a doctor within 24-48 hours. R. 248-5 at 14 (Duffield Dep. 48:6-22); R. 242-4 at 17 (Garcia Dep. 64:13-21). Determining whether Franz should have taken these steps does not require specialized medical knowledge, especially considering the Seventh Circuit's holding that Palmer's condition was "so obvious that even a lay person could perceive the need for an accommodation." *Palmer v. Franz*, 928 F.3d 560, 564 (7th Cir. 2019).[3] To be sure, it may be difficult to prove Franz acted negligently given Nurse Garcia's testimony that Franz's handling of the intaking screening was consistent with NRC's policies and procedures. R. 242-4 at 19 (Garcia Dep. 70:4-10, 72:14-17). But "[o]ne need not be a doctor, a nurse or any other kind of health provider

---

[2] In arguing that the issue is whether he breached the standard of care in filling out the transfer screening form, Franz slices Palmer's claim too thin. *See* R. 251 at 7. Palmer's claim is more general; namely, that Franz should have done more to secure him a low bunk pass.

[3] Franz correctly notes that this language from the Seventh Circuit's opinion does not directly relate to whether Palmer's medical malpractice claim requires expert testimony. *See* R. 251 at 8-9. But the language is still relevant in that a juror could more readily determine whether Franz acted unreasonably by not immediately attempting to secure a low bunk pass for an inmate with a missing hand as opposed to, for example, an inmate with carpal tunnel.

6

to appreciate [the risk]" of someone with a missing hand climbing onto a top bunk. *Heastie*, 877 N.E.2d 1064, 1088. And this case is a far cry from those in which the alleged negligence may be imperceptible to a layperson without expert assistance, such as whether a surgeon improperly inserted a screw during his repair of a forearm fracture. *See McNichols v. Jersild*, 523 N.E.2d 1172, 1176 (Ill. App. Ct. 1988). Here, a juror can readily appraise using common knowledge whether Franz should have taken additional steps to ensure that Palmer received a low bunk pass. *See Burns v. Hardy*, 2016 WL 4366496, at *4 (N.D. Ill. Aug. 16, 2016) (holding expert testimony not required on medical malpractice claim where physician did not appeal rejection of her request for a biopsy and stating that "[w]ith the help of all the paperwork that will be submitted to the jury that has been discussed by various witnesses through their testimony, this is a situation that can be appraised by a layman[.]"). Accordingly, the Court concludes that Palmer does not need a standard-of-care expert to proceed with his medical malpractice claim.

## II. Proximate Cause

Franz next argues that his conduct was not a proximate cause of Palmer's injury. Proximate cause "is ordinarily a question for the jury to decide." *Elliot v. Williams*, 807 N.E.2d 506, 510 (Ill. App. Ct. 2004). The "proximate cause of an injury can become a question of law only when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them." *Id.*

7

Franz points out that it was the IDOC staff's decision to put Palmer in a top bunk, and that that decision constitutes an intervening act that precludes a finding of proximate cause. Franz also notes several ways that IDOC staff could have secured Palmer a low bunk pass after his transfer screening. *See* R. 251 at 12. True, the "negligence of a defendant will not constitute a proximate cause of a plaintiff's injuries if some intervening act supersedes the defendant's negligence." *Mack v. Ford Motor Co.*, 669 N.E.2d 608, 613 (Ill. App. Ct. 1996). But "if the defendant could reasonably foresee the intervening act, that act will not relieve the defendant of liability." *Id.* Palmer presented testimony evidence from a Wexford representative that "[s]ecurity staff does not have access to the medical records of individuals" and that medical personnel inform security officers "of any types of restrictions [the individuals] may have or anything that would affect possibly housing assignments." R. 248-3 at 37 (Martin Dep. 142:7-18). An IDOC representative also testified that the issuance of low bunk passes are medical decisions that correctional officers will adhere to in assigning bunks. R. 248-6 at 8 (Hunter Dep. 22:20-23:10). For example, if an inmate with a low bunk pass is assigned to a cell where the bottom bunk is occupied, the security officer should instruct the person without the pass to move to the higher bunk. *Id.* (Hunter Dep. 24:24-25:11). It does not matter whether Franz conclusively knew where Palmer would be assigned; the operative question is whether the IDOC's decision was reasonably foreseeable. Nothing in the record indicates Palmer was more likely to receive a low bunk absent a permit. As such, a

8

reasonable jury could find it was foreseeable that Palmer would be assigned to a top bunk if he did not have a low bunk pass. Franz's motion on this basis is denied.

## Conclusion

For the reasons stated above, Franz's motion for summary judgment on Palmer's medical malpractice claim [R. 241] is denied.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: April 20, 2020